UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER VENEGAS,                )  |   |
|                                     )  |   |
|           Plaintiff,                )  |   |
|                                     )  |   |
| v.                                  )  | Docket No. 2:14-cv-249-NT |
|                                     )  |   |
| GLOBAL AIRCRAFT SERVICE, INC.       )  |   |
| and LUFTHANSA TECHNIK NORTH         )  |   |
| AMERICA HOLDING CORP.,              )  |   |
|                                     )  |   |
|           Defendants                )  |   |

DECISION AND ORDER ON PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION

A former worker from Global Aircraft Service, Inc. ("**Global Aircraft**") and Lufthansa Technik North America ("**Lufthansa Technik**") has brought this lawsuit alleging that the Defendants violated the Fair Labor Standards Act ("**FLSA**") by misclassifying him as an independent contractor and, as a result of the misclassification, failed to pay him overtime for all hours worked in excess of 40 hours per week. The Plaintiff has moved to certify this action conditionally as a collective action under the FLSA and to provide notice to all potential opt-in members as authorized by 29 U.S.C. § 216(b). I **GRANT** the motion for conditional certification.

I. ANALYSIS

A. FLSA Conditional Certification

Determining ultimately whether Global Aircraft and Lufthansa Technik owes overtime pay to these workers under the FLSA depends on whether they are properly classified as "independent contractors" or "employees." The FLSA requires employers to pay overtime compensation to "employees" who work more than 40 hours per week. 29 U.S.C. § 207. To enforce this requirement, the statute permits similarly situated employees to sue collectively for violations of the rule. 29 U.S.C. § 216(b). A two-step process determines whether a proposed group of plaintiffs is "similarly situated," and therefore qualified to proceed as a conditional collective action. *See Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 363-64 (D. Me. 2010) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n.2 (5th Cir. 2008)); *Kane v. Gage Merch. Servs., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001). In the first step, assessed early in the litigation, plaintiffs need make only a "modest factual showing" that, with similar but not necessarily identical jobs, they suffered from a common unlawful policy or plan. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (internal quotation marks and citations omitted). If they make this showing, then notice can go out inviting other similarly situated workers to "opt into" the collective action. *Id.* After discovery takes place, a court then must—at the second stage—"make a factual determination as to whether there are similarly-situated employees who have opted-in" and, thus, whether it is appropriate to continue to permit the case to proceed as a collective action. *See Sandoz*, 553 F.3d at 916 n.2 (citing *Mooney v.*

*Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), overruled in part on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)); *Comer*, 454 F.3d at 546-47.

### B. The Plaintiff's Similarly Situated Showing

The Plaintiff Christopher Venegas proposes a class of persons who worked on the Defendants' aircraft restoration project in Auburn, Maine and who were not paid overtime for a period of three years prior to filing the complaint.[1] Compl. ¶ 40 (ECF No. 1). Essentially, the Defendants object to conditional certification on the grounds that: 1) responding that the affidavit of Venegas alone is insufficient evidence to support class treatment of other individuals under the FLSA; 2) there are no allegations or evidence of a common policy or plan; and 3) the question of whether workers are independent contractors requires the court to make "highly fact dependent determinations of whether the workers were independent contractors," which are inappropriate for a collective action. Def. Global Aircraft Service's Opp'n. To Pl.'s Mot for Conditional Certification at 5, 4-10 (ECF No. 50); Def. Lufthansa Technik's Opp'n. To Mot. for Conditional Certification at 9-17 (ECF No. 51).

---

[1] In his proposed notice, the Plaintiff offers to provide notice to workers from the aircraft rebuilding project in Auburn, Maine as far back as January 1, 2008. Notice of Overtime Wages Lawsuit at 1 (ECF No. 44-4). Likewise, the Plaintiff seeks to have the Defendants provide discovery regarding the identity of workers back to January 1, 2008. Proposed Court Approved Interrogatory to Defendants at 1 (ECF No. 44-3). The Plaintiff does not explain why the notice and discovery should reach back to workers in 2008.
    The Plaintiff has pled willful violation of the FLSA, which would potentially permit members of the collective action to recover for unpaid wages for a period of three years before opting into the lawsuit. 29 U.S.C. §§ 255(a); 256(b). This action was filed on June 24, 2014, and 24 individuals have already opted-in. At the outside, therefore, notice should be given to workers on the aircraft rebuilding project as far back as June 24, 2011.

3

To resolve the substantive question of whether an individual is an employee under the FLSA, courts apply a six-factor economic realities test derived from a 1947 Supreme Court decision, *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947):

> (1) the degree of control exercised by the employer over the worker;
> (2) the worker's opportunity for profit or loss;
> (3) the worker's investment in the business;
> (4) the degree of skill and independent initiative required to perform the work;
> (5) the permanence or duration of the working relationship; and
> (6) the extent to which the work is an integral part of the employer's business.

*Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106, 112 (D. Me. 1998). However, there is no agreement in the caselaw on whether to apply the economic realities test on conditional certification. *See, e.g., Spellman v. American Eagle Express, Inc.*, No. 10-1764, 2011 WL 4102301, at *1 (E.D. Pa. May 18, 2011) (conditionally certifying a group of delivery drivers over a three state area without analyzing economic reality factors); *Edwards v. Multiband Corp.*, No. 10-2826, 2011 WL 117232, at *2 (D. Minn. Jan 13, 2011) (plaintiffs must establish a "colorable basis for their claim" that they were "victims of a single . . . policy or plan"; they need not be identical but only similarly situated to putative class members); *In re Penthouse Exec. Club Comp. Litig.*, No. 10-1145, 2010 WL 4340255, at *4 (S.D.N.Y. Oct. 27, 2010) (if plaintiffs who have similar job responsibilities and performed services for the same owner do "not merit at least preliminary class treatment, one would expect that class treatment would rarely be granted in FLSA actions"). *But see, e.g., Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 668-69 (E.D. Pa. 2010) (court analyzed economic realities factors in order to determine whether health care workers were similarly situated

4

under the FLSA); *Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354 (S.D. Ga. 2008) (court analyzed economic realities factors to find telemarketing agents were similarly situated and granted conditional certification under the FLSA). The Court will have to apply the economic realities factors conclusively when ultimately determining whether the workers are employees or independent contractors, but the question now is simpler: whether the workers in the proposed class are similarly situated. The Court will use certain of the economic realities factors to the extent they are useful to that inquiry and since the record at this stage makes it possible.

Mr. Venegas has provided an affidavit, which states that starting in 2013 he furnished services related to rebuilding an airplane for the Defendants at the Auburn, Maine airport. Aff. of Christopher Venegas ¶ 4 (ECF No. 44-1). Although over time the Defendants changed Venegas's specific job duties, his work was always focused on stripping down and rebuilding the Defendants' airplane. *Id.* ¶¶ 4, 6. There were 50 or 60 other people doing the same sort of work for the Defendants on the airplane. *Id.* ¶ 7. Except for three people who worked on fuel tanks, Venegas says that the Defendants classified everyone working on the airplane as an independent contractor. *Id.* ¶ 7. The Defendants paid these workers an hourly rate and did not pay overtime or withhold taxes or Social Security from paychecks. *Id.* ¶ 9. The workers typically worked over 60 hours each week. *Id.* ¶ 10. Some tools used to work on the airplane were provided by the Defendants and some tools were provided by the workers. *Id.* ¶ 11. The workers were provided with uniforms, which they were required to wear at work. *Id.* ¶ 12. The Defendants also provided workers with

company email addresses, which the Defendants used to communicate with workers about meetings and changes in work assignments. *Id.* Venegas met with representatives of the Defendants each week to provide a status update on his work. *Id.* ¶ 5. Since this case was filed, 24 individuals have completed consent forms allowing them to opt-in to the lawsuit.[2]

Filing a single supporting affidavit does not make the Plaintiff's evidentiary showing insufficient on its face. *See, e.g., Ondes v. Monsanto Co.*, No. 4:11-cv-197 JAR, 2011 WL 6152858, at *5 (E.D. Mo. Dec. 12, 2011) (single affidavit found to support conditional certification). Based on his affidavit, Venegas has personal knowledge of the type of work, the hours of work and the conditions under which the other workers provided service to the Defendants. Unlike the cases Lufthansa Technik cites, it is evident from the affidavit that Venegas has personal knowledge of the information in his affidavit.

The alleged FLSA violations for failure to pay overtime compensation due to misclassification all occurred to the workers on the Lockeed Super Star aircraft in Auburn, Maine. All Plaintiffs are alleged to have been subjected to the same policies and practices of being denied overtime by the Defendants. The actions, which

---

[2] Lufthansa Technik notes that it does not know what information the Plaintiff provided the opt-in plaintiffs. Def. Lufthansa Technik's Opp'n. To Mot. for Conditional Certification at 2 n.1. From the consent form itself, the Court can determine that they were informed that opting-in requires that they "currently work[] for or previously worked for Defendants Global Aircraft Service, Inc. and Lufthansa Technik North America Holding Corp. and [that they] intend[] and consent[] to opt-in to the unpaid wage case filed by Christopher Venegas pursuant to Fair Labor Standards Act." Opt-In Notices (ECF Nos. 4-1 through 4-11, 5, 6, 7, 8, 12, 25, 32, 33, 35, 37, 43 and 45). Reference in the Consent Form to the Venegas FLSA case identifies for potential opt-in plaintiffs where they can get additional information about the litigation.

constitute the violations claimed by Venegas and the opt-in plaintiffs, are also similar in that all proposed class members were denied the payment of overtime compensation by virtue of how the Defendants classified them. At this initial stage, I conclude that the Plaintiff has presented sufficient evidence, based on his personal knowledge, to show that the workers are similarly situated under the FLSA to justify notice to other workers in the defined class. The highly fact-dependent analysis will be done at the second stage.

### C. Mailing and Posting Notice

The Plaintiff requests that his counsel be provided with the names, last known addresses, last known phone numbers, and email addresses of all the potential class members. Plaintiff also requests that the notice of the litigation and consent forms be posted at "the Defendants' Auburn, Maine locations and offices" and that they "shall remain posted throughout the pendency of this litigation." Plaintiff's Proposed Order at 1 (ECF No. 44-2). The Defendants oppose the Plaintiff's request that the notice and consent forms be posted in the workplace claiming that such notice is redundant.

"Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will be notified by mail." *Rosario v. Valentine Avenue Discount Store, Co.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011) (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y.2011)); *see also Chen v. Oceanica Chinese Restaurant, Inc.*, 2014 WL 1338315, at *11 (E.D.N.Y. April 2, 2014) (noting that "courts routinely require such

postings, even absent a showing of necessity"). Accordingly, the notice shall be posted as requested by the Plaintiff and shall remain posted for the duration of the opt-in period.

### D. Content of Notice and Consent Form

I have reviewed the Plaintiff's proposed notice and consent form. Notice and Opt-In Consent to Join Collective Action (ECF No. 44-4). The Plaintiff shall prepare a new Notice and Consent form that provides that the dates should be "between June 24, 2011 and the present date" instead of "January 1, 2008 and the present date".

## II. CONCLUSION

Accordingly, I **GRANT** the Plaintiff's motion for conditional certification of this collective action. The Plaintiff's proposed Notice and Consent Form are approved, subject to the modification discussed above, and I **GRANT** the Plaintiff's request to circulate the Notice and Consent Form to all potential class members. I **GRANT**, in part, the Plaintiff's request to post the Notice and Consent Form at the Defendants' Auburn, Maine locations and offices and the notice shall remain posted throughout the duration of the opt-in period.

I further **ORDER** that the Defendants provide the Plaintiff, within 20 days of the date of this order, with the names, addresses, telephone numbers, email addresses, dates of birth, dates of employment, and positions held for every current

and former person who worked as a metal worker on the Lockeed Super Star aircraft located in Auburn, Maine between June 24, 2011 and the present date.

**SO ORDERED.**

                                              /s/ Nancy Torresen
                                              United States Chief District Judge

Dated this 5th day of February, 2015.