# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CHAISTOPHER VENEGAS et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| GLOBAL AIRCRAFT SERVICE, INC. ) | Docket No. 2:14-cv-249-NT |
| and LUFTHANASA TECHNIK ) | |
| NORTH AMERICA HOLDING ) | |
| CORP., ) | |
| ) | |
| Defendants. ) | |

## DECISION AND ORDER ON CLASS ACTION SETTLEMENT AND ATTORNEY FEES

Before me is the Plaintiffs' unopposed motion for final approval of class action settlement (ECF No. 176) and the Plaintiffs' unopposed motion for attorney fees and reimbursement of litigation expenses (ECF No. 177). The Plaintiffs are sheet metal workers, mechanics, and painters working on an aircraft restoration project in Auburn, Maine who allege that Global Aircraft Service, Inc. ("**GAS**") and Lufthansa Technik North America Holding Corporation ("**LTNA**") improperly classified them as independent contractors rather than employees and seek unpaid overtime wages. The parties have come to an agreement to settle the case.

I previously authorized the Plaintiffs to send notice of the settlement out to the class members. Order Authorizing Notice of Class Action Settlement (ECF No. 174). Notice of the settlement has been successful, reaching 76 of 81 class members. Seventy class members have filed claims forms and are entitled to a distribution from the settlement fund.

After conducting a fairness hearing on June 15, 2017, as Federal Rule of Civil Procedure 23(e) requires, I conclude that the settlement is fair, reasonable, and adequate, that the attorney fees and expenses are reasonable, and that the service award to Mr. Venegas is warranted and reasonable.

## CLASS ACTION SETTLEMENT

**I.     Settlement and Plan of Distribution**

A proposed class action settlement is subject to the following procedure:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e). Here, class members received individual notice of the settlement; there has been a hearing; there are no side agreements; no class members filed written objections; no class members appeared at the hearing. What remains, then, is for me to determine whether the settlement is "fair, reasonable, and adequate."

I consider the following factors to assess a class settlement: (1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration. *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 2011 WL 1398485, *2 & n.16 (D. Me. April 13, 2011) (citing additional sources).

### A. Proposed Settlement Compared to Likely Trial Outcome

The parties settled the lawsuit before trial for $1,100,000, which leaves the class $760,636.76 after fees and expenses. Settlement Agreement ¶ 1.31 (ECF No. 164-1). The potential maximum recovery for the class at the time of settlement was $1,350,773.03 over the six-year class period. Comparing the benefits obtained from the settlement to the likely results of the litigation, the monetary relief afforded to the class members is approximately 56% of the maximum recovery each class member would be entitled to receive if they recovered payment in full for the amount of overtime worked. GAS separately provided $10,000 toward administrative expenses. Settlement Agreement ¶ 2.7.1.

The class's recovery here is reasonable because there was no assurance of success on the merits. At trial, the Plaintiffs would still have borne the burden of proving that they were employees and were eligible for the overtime payment that they sought. Additionally, there was extensive summary judgment briefing in this case that centered on: 1) whether the Defendants were exempt from the payment of overtime wages under the FLSA because of a common carrier status under the

Railway Labor Act ("**RLA**") and 2) whether the Airline Deregulation Act preempted Plaintiffs' claims under the Maine Wage and Overtime Act. Order on Defs.' Mot. for Summ. J. (ECF No. 146). Although the Plaintiffs overcame summary judgment on the FLSA claims as to both of the Defendants, the Court granted summary judgment in favor of LTNA on the Maine Wage and Overtime Act claims. *Id*. As a result, at trial, the Plaintiffs would have been required to rebut the Defendants' RLA defense and show that the work they performed was not typical of the work performed by air carrier employees and that the services they performed were not essential to the transportation operation of an air carrier, an uncertain undertaking given the fact that the work in question was being performed on an aircraft for Lufthansa. Hence, there was substantial risk that Plaintiffs would not prevail at trial and would have been left with no reward of damages at all.

### B. Stage of Litigation

Also significant is the amount of work completed by the parties prior to settlement. Discovery was complete when settlement was reached. Both sides had answered written discovery and together the parties had taken eleven depositions. At the time of settlement, the parties had engaged in significant motions practice, including a motion for conditional certification of a collective action under the FLSA, a motion for class certification, and the Defendants' motion for summary judgment. The next step, had the parties not reached a settlement in November 2016, would have been a trial, likely in January 2017. Given the years of contested litigation and discovery efforts that preceded negotiations, the settlement here was achieved with a clear view as to the strengths and weaknesses of the case.

### C. Class Reaction

The reaction of the class strongly favors approval of the settlement. After a successful direct mail notice program, none of the class members lodged an objection to the settlement terms or requested to be excluded. The complete absence of objections or exclusions here supports approval. Accordingly, the class's implicit support weighs in favor of the fairness and reasonableness of the settlement terms.

### D. Conduct of Negotiations and Quality of Counsel

The parties' arm's-length settlement negotiations also support a determination that the settlement was fair and that it was not a product of collusion or fraud among the parties. Indeed, this litigation had been pending for over two years before settlement was reached. During that time, the parties fully briefed the Defendants' joint motion for summary judgment. It was only after that motion proved unsuccessful that the parties engaged in any serious settlement discussions.

Counsel for both sides then zealously negotiated on behalf of their clients. The settlement was achieved after a ten-hour day of negotiations with the Magistrate Judge. The result was a compromise of the claims that took into account the risks of establishing liability and damages. The Plaintiffs' attorneys from The Employment Law Group, PC and Johnson Webbert & Young, LLP have extensive experience in labor law and class action cases. The conduct of the negotiations and the quality of counsel support final approval of the class settlement.

**E. Case Prospects, Including Risk, Complexity, Expense, and Duration**

This case involved substantial risk to the Plaintiffs. As detailed above, to prevail on their wage and hour claims, the Plaintiffs not only would have had to prove as a threshold matter that they were employees and not independent contractors, but also that they could overcome the RLA affirmative defense. Thus, there was a very real possibility that the Plaintiffs might have recovered nothing in this case. Equally daunting was the prospective expense and duration of the rest of litigation. At the time the case settled, the litigation already had spanned well over two years. This case settled for $1,100,000.00 and the parties state that this amount was predicated, in part, on GAS's ability to pay.

Under the terms of the retainer and the Settlement Agreement, the Plaintiffs' attorneys are also entitled to $308,000 in fees and expenses that amount to $18,084.63. In addition to the $10,000 that GAS is paying to the claims administration, the Plaintiffs also allocate $5,000 of the settlement amount for claims administration and so the total expenses are $23,084.63. The Plaintiffs also allocate $8,278.63 to the named Plaintiff as a service award. That means the money to be divided amongst the class members is $1,100,000.00 minus $308,000, minus $23,084.63, minus, $8,278.61, or $760,636.76. Because of GAS's inability to pay its share of the settlement at once, the class will be paid in full at the outset, and counsel for the Plaintiffs have agreed to receive their fees on an installment basis. But for the settlement, it is reasonable to believe that had this case gone to trial, the additional expenditure of money and time by all the parties would have been significant.

### F. Reasonableness of Settlement

After considering all these factors, I conclude that the proposed settlement is fair, reasonable, and adequate. The assured compensation now is a fair trade-off for the uncertainties of trial and appeal and the accompanying delay in receiving any damages. I also find that the plan of distribution to each class member is fair, reasonable, and adequate.

## II. Attorney Fees

The Plaintiffs seek attorney fees, apart from the settlement fund, in line with the settlement agreement. Rule 23(h) provides that a court may award reasonable attorney fees and costs. Class members or a party may object to an attorney fees request. A court may hold a hearing, and a court "must find the facts and state its legal conclusions under Rule 52(a)." Fed. R. Civ. P. 23(h).

The Plaintiffs' have requested an attorney fee award of 28% of the $1,100,000 settlement or $308,000 plus costs of $23,084.63. Pls.' Mot. for Attorneys' Fees and Litigation Expenses 1 (ECF No. 177). The Settlement Agreement and notice sent to the class members states that the Plaintiffs' attorneys will seek fees of no more than 28% and litigation expenses. Settlement Agreement 24; Notice 3 (ECF No. 173). I heard the motion at the final fairness hearing on June 15, 2017, and neither the Defendants nor class members objected to the attorney fees request.

Because of GAS's inability to pay its share of the settlement at once, the attorney fees will be paid on an installment basis. The Plaintiffs' attorneys will receive $108,000.00 for fees from the initial settlement monies. Thereafter, GAS will make a direct payment to The Employment Law Group, PC of $100,000.00 on

January 1, 2018, and GAS will make another direct payment to The Employment Law Group, PC of $100,000.00 on January 1, 2019. Understanding the complexities and risks of the case and the relatively modest size of the potential recovery of the class, I find the attorney fees award of 28% of the settlement fund and the expenses in this case are reasonable and consistent with other awards in wage and hour cases.

**III.    Service Award**

A named plaintiff is a necessary component of any class action, and thus, a service award may be appropriate to induce an individual to take part in the suit. *See Scovil v. FedEx Ground Package System, Inc.*, 2014 WL 1057079 at *6 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). In determining whether an incentive award is called for, courts consider the actions that the named plaintiffs have taken to protect the interests of the class, the amount of time and effort they have expended in pursing the litigation, the degree to which the class has benefited from the named plaintiffs' efforts, and any negative effects they have risked. *Scovil*, 2014 WL 1057079, at *6.

The parties propose that Christopher Venegas be paid $8,278.61 as a service award. The service award plus his share of the damage award represents the full amount of overtime pay that would have been owed to Mr. Venegas if he had prevailed on his claims. No class member objected to the award. I conclude that the award is reasonable given the time and energy Mr. Venegas committed to the case.

## CONCLUSION

There is no reasonable basis to believe that the Plaintiff class could achieve a higher settlement amount, and there are significant risks posed by continued litigation. I therefore **APPROVE** the settlement agreement and plan of distribution, including the service award to the named Plaintiff. I also **APPROVE** the requested attorney fees and expenses. The parties shall report to me regarding any settlement funds remaining for cy pres distribution on, or before, October 2, 2017.

The case is **DISMISSED** with prejudice; provided, however, that, without affecting the finality of this Judgment and Order of Dismissal with Prejudice, the Court hereby retains exclusive and continuing jurisdiction for purposes of supervising, administering, implementing, interpreting, and enforcing this Judgment and Order of Dismissal with Prejudice, as well as the Settlement Agreement.

SO ORDERED.

/s/ Nancy Torresen  
United States Chief District Judge

Dated this 26th day of June, 2017.